[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14931
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:10-cr-14048-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL MEDRANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 13, 2011)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Miguel Medrano appeals his 57-month sentence for illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2). On appeal, Medrano argues that his 57-month sentence was substantively unreasonable. After review, we affirm.

## I. BACKGROUND

### A. Deportation and Illegal Reentry

Medrano is a citizen and national of Mexico, but was raised in the United States from the age of two. In 2004, Medrano was convicted in Southern District of Florida of conspiracy to possess with intent to distribute more than fifty grams of methamphetamine. The district court imposed a 37-month sentence, followed by three years' supervised release. One of Medrano's special conditions of supervised release required that, if Medrano was deported, he was not to reenter the United States without permission from immigration authorities. After serving his imprisonment term, Medrano was deported to Mexico in March 2007.

Medrano lived in the border area of Mexico and received money from his family as support. After several months, Medrano walked across the U.S. border without receiving permission to enter the United States. Medrano lived with his parents in Florida until late 2009, when he moved to Georgia.

The U.S. Probation Office learned that Medrano had applied for and was issued a Florida driver's license on April 28, 2008. On May 19, 2008, a warrant was issued against Medrano for violating his supervised release.

Two years later, Medrano was arrested in Georgia for driving under the influence. Medrano was detained by the U.S. Marshals Service on the outstanding warrant and removed to the Southern District of Florida. There, Medrano was charged with the instant offense and pled guilty.

## B.    Presentence Investigation Report

Using the 2009 version of the Sentencing Guidelines, the Presentence Investigation Report ("PSI"): (1) assigned Medrano a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a); (2) applied a 16-level increase, pursuant to § 2L1.2(b)(1)(A)(i), because Medrano had been deported after being convicted of a felony drug trafficking offense; (3) applied a 3-level decrease, pursuant to § 3E1.1, for Medrano's acceptance of responsibility; (4) assigned 4 criminal history points based on Medrano's prior convictions for DUI and drug conspiracy; (5) assigned 2 criminal history points, pursuant to § 4A1.1(d), because Medrano committed the instant offense while on supervised release; and (6) assigned 1 criminal history point, pursuant to § 4A1.1(e), because Medrano committed the

instant offense within two years after release from custody.[1]  With a criminal history category of IV and an adjusted offense level of 21, the PSI recommended an advisory guidelines range of 57 to 71 months' imprisonment.  Neither party objected to the PSI.

## C.    Sentencing

At the October 12, 2010 sentencing hearing, Medrano requested a downward variance from the advisory guidelines range based on: (1) the upcoming guidelines amendment that would authorize a downward departure based on the defendant's cultural assimilation;[2] and (2) the fact that Medrano's criminal history category increased because of "recency" points, and the recency of his illegal reentry was related to his cultural assimilation.  Medrano stressed that he was raised and educated in the United States, his family lived in the United States, and Mexico was not really his country.

---

[1]After Medrano's sentencing and effective November 1, 2010, the Sentencing Commission eliminated the "recency" points provision in U.S.S.G. § 4A1.1(e).  See U.S.S.G. app. C, amend 742 (explaining that the amendment was based on recent research indicating that "consideration of recency only minimally improves the predictive ability" of the criminal history score and on public comment suggesting that recent recidivism "may reflect the challenges to successful reentry after imprisonment rather than increased culpability").

[2]Effective November 1, 2010, the Sentencing Commission amended the commentary to 2L1.1 to address "when a downward departure may be appropriate in an illegal reentry case . . on the basis of the defendant's cultural assimilation to the United States."  U.S.S.G. app. C, amend. 740.  The Sentencing Commission did not make Amendment 740 retroactive.  See U.S.S.G. § 1B1.10(c) (listing retroactive guidelines amendments).  However, the district court considered Medrano's cultural assimilation in any event.

The district court acknowledged that it could vary downward from the advisory guidelines range based on Medrano's cultural assimilation/recency points argument, but declined to do so in Medrano's case. Among other things, the district court stressed that the goal was to assimilate people who had not violated narcotics laws. The district court stated that it would be more sympathetic to Medrano's argument if Medrano's prior offense was related to immigration as opposed to trafficking in methamphetamine, which is a very serious crime for which Medrano received a substantial sentence.

Before imposing a sentence, the district court stated that it had considered the parties' arguments, the PSI, the advisory guidelines and the statutory factors. The district court again acknowledged that it "could take into consideration the upcoming amendments" and sentence Medrano "anywhere within the statutory maximum." The district court imposed a 57-month sentence, at the low end of the advisory guidelines range. Medrano appealed.

## II. DISCUSSION

On appeal, Medrano does not challenge the district court's guidelines calculations or otherwise argue that his sentence is procedurally unreasonable. Rather, Medrano argues that his 57-month sentence is substantively unreasonable. We review the substantive reasonableness of a sentence under the abuse-of-

discretion standard.  Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in light of both the record and the 18 U.S.C. § 3553(a) factors.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).[3] We ordinarily expect a sentence within the advisory guidelines range will be reasonable.  United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Here, we cannot say Medrano's 57-month sentence, at the bottom of the advisory guidelines range of 57 to 71 months, is substantively unreasonable.  As the district court pointed out, Medrano's criminal history included a serious drug trafficking conviction.  The district court concluded that the seriousness of Medrano's prior felony drug conviction outweighed the fact that Medrano may have returned to the United States so quickly after his deportation because of his cultural assimilation.

Medrano argues that he is the "living embodiment" of the new cultural assimilation downward departure provision in U.S.S.G. § 2L1.2.  That provision,

---

[3]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

6

however, directs the sentencing court to consider not only the defendant's ties to the United States, but also the seriousness of the defendant's criminal history.  See U.S.S.G. § 2L1.2 cmt. n.8.  As the district court explained, a defendant's plea for mercy based on cultural assimilation is less compelling when he has already committed a felony drug crime in the United States.  Medrano has not shown that the district court's denial of his request to vary downward was an abuse of discretion.

**AFFIRMED.**